UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KELLY J. DORFER,
                        Plaintiff,

v.                                               5:05-CV-0621
                                               (GHL)
MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,
                        Defendant.
_____

APPEARANCES:                                     OF COUNSEL:

OOT & ASSOCIATES, PLLC                  NEAL P. MCCURN, JR., ESQ.
*Counsel for Plaintiff*
503 East Washington Street
Syracuse, New York 13202

HON. GLENN T. SUDDABY                    WILLIAM H. PEASE, ESQ.
United States Attorney for the                  Assistant United States Attorney
 Northern District of New York
*Counsel for Defendant*
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

## **MEMORANDUM-DECISION AND ORDER**[2]

**I.     BACKGROUND**

        **A.    Procedural History**

        Plaintiff protectively filed an application for disability insurance benefits ("DIB") on June

---

      [1]  The complaint named Jo Anne B. Barnhart as Defendant, then the Commissioner of Social Security. On February 12, 2007, Michael J. Astrue assumed that position. Therefore, he shall be substituted as the named Defendant pursuant to Fed. R. Civ. P. 25(d)(1).

      [2] The parties consented voluntarily to the exercise of jurisdiction by a United States Magistrate Judge. Dkt. No. 11. The matter was referred to the undersigned on January 30, 2007. *Id.*

26, 2003.  (Administrative Transcript ("T") at 47-49, 59.)  The application was denied initially on September 9, 2003.  (T. at 30-33.)  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on July 13, 2004.  (T. at 313-345.)  On August 25, 2004, ALJ Owen B. Katzman issued a decision finding that Plaintiff was not disabled.  (T. at 11-21.)

Plaintiff appealed to the Appeals Council, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on March 17, 2005.  (T. at 4-6.)  Plaintiff commenced this action on May 20, 2005.  (Dkt. No. 1.)

### B. The Contentions

Plaintiff's brief [3] sets forth the following claims:

(1)  The ALJ erred in failing to give controlling weight to her treating source's opinion. (Dkt. No. 5 at 9-12.)

(2)  The ALJ erred in finding that Plaintiff's subjective complaints were not fully credible. (Dkt. No. 5 at 12-16.)

(3)  The residual functional capacity determination is not supported by substantial evidence. (Dkt. No. 5 at 10-12.)

Defendant disagrees, and argues that the decision should be affirmed.  (Dkt. No. 9.)

## II. APPLICABLE LAW

### A. Standard for Benefits

---

[3]  Plaintiff's counsel is reminded that Northern District of New York General Order Number 18 requires that briefs in Social Security appeals contain, *inter alia*, "[a] statement of the issues presented for review, set forth in separate numbered paragraphs" and that "[t]he argument shall be divided into sections separately treating each issue and must set forth the contentions of plaintiff with respect to the issues presented and reasons therefor."  General Order Number 18 (1)(a), (c) (N.D.N.Y. Sept. 12, 2003).  Here, Plaintiff's counsel failed to set forth the issues in separate numbered paragraphs and failed to divide the argument into sections separately treating each issue. Moreover, Plaintiff's counsel failed to paginate his brief in compliance with Local Rule 10.1(a).

To be considered disabled, a plaintiff seeking DIB or supplemental security income ("SSI") benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2004). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") has promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520 (2007). "If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R. §§] 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.[1] If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether

      the claimant is capable of performing other jobs existing in significant numbers in the national economy.[1]  [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

      The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003).  If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy.  *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

    **B.**    **Scope of Review**

      In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Serrano v. Barnhart*, 2003 WL 22683342, at *10; *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

      A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g)

(2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**III.   THE PLAINTIFF**

Plaintiff was born on January 14, 1963. (T. at 47.) She completed high school and later after undergoing training, was certified as a dental assistant. (T. at 92.) Plaintiff's prior work history consists of working as a dental assistant. (*Id.*) Plaintiff alleges disability due to back and leg pain. (T. 14, 62.)

**IV.   THE ALJ'S DECISION**

The ALJ found that: (1) Plaintiff had not engaged in any substantial gainful activity since the alleged onset date of December 30, 2001 (T. at 15); (2) Plaintiff has a low back condition and a depressive disorder, not otherwise specified, which are severe impairments (T. at 17); (3) Plaintiff's severe impairments did not meet or equal a listed impairment (T. at 17); (4) Plaintiff retained the

residual functional capacity to perform sedentary work that allows limited bending and limited contact with the public, and a moderate impairment in concentration; accordingly she is unable to perform her past relevant work (T. at 19); (5) Considering the testimony of a vocational expert and the Medical-Vocational Guidelines, the ALJ found that there were a significant number of jobs in the regional and national economies that Plaintiff could perform (T. at 19-20). Thus, the ALJ concluded that Plaintiff was not disabled. (T. at 20.)

## V. DISCUSSION

### A. Whether The ALJ Erred in Failing to Give Controlling Weight to Plaintiff's Treating Source's Opinion

The medical opinions of a treating physician[4] are given "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2007). In *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004), the Second Circuit provided the following guidance:

> [T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2). Here, the key medical opinions submitted by Dr. Elliott to the ALJ were not particularly informative and were not consistent with those of several other medical experts. Thus, Dr. Elliot's opinion as the treating physician does not sustain controlling weight.

*Halloran*, 362 F.3d at 32.

---

[4] "Treating source" is defined as one's own physician, psychologist, or other acceptable medical source who provides, or has provided, medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the patient/plaintiff/claimant. 20 C.F.R. § 404.1502 (2007).

Even if the treating physician's opinion is contradicted by substantial evidence and thus is not controlling, it still may be entitled to significant weight "because 'the treating source is inherently more familiar with a claimant's medical condition than are other sources.'" *Santiago v. Barnhart*, 441 F. Supp. 2d 620, 627 (S.D.N.Y. 2006) (quoting *Gonzalez v. Callahan*, No. 94 Civ. 8747, 1997 WL 279870, at *11 (S.D.N.Y. May 23, 1997) (citing *Schisler v. Bowen*, 851 F.2d 43, 47 (2d Cir. 1988))). However, if not controlling, the proper weight given to a treating physician's opinion depends upon the following factors: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Plaintiff argues that the ALJ erred by failing to assign controlling weight to the opinion of her treating physician, Dr. David Page.[5] (Dkt. No. 5 at 9-12.) Defendant contends that Dr. Page's opinion was not entitled to any significant weight. (Dkt. No. 9 at 13-14.)

In his decision, the ALJ found that Dr. Page's opinion was not entitled to controlling weight. (T. at 16-18.) In so finding, the ALJ discussed the relevant factors set forth in the governing regulations, including the length of the treatment relationship, the nature and extent of that relationship, the consistency of the opinion with the record as a whole, and whether the opinion was from a specialist. (T. at 16-18.) Specifically, the ALJ noted that Dr. Page treated Plaintiff since

---

[5] Dr. Page completed a Medical Source Statement in which he indicated that Plaintiff could lift and/or carry less than ten pounds occasionally; and stand and/or walk less than two hours in an eight-hour workday. (T. at 300.) Dr. Page also indicated that Plaintiff was unable to sit for any length of time; however he then indicated that she must periodically alternate sitting and standing. (T. at 301.) He also indicated that Plaintiff was limited in her abilities to push and/or pull using both her upper and lower extremities, and had certain postural, manipulative, and environmental limitations. (T. at 301-303.)

2001; that he treated her for low back pain and depression using medication, physical therapy, and a TENS unit; that Dr. Page's opinion was inconsistent with the overall record; and that Dr. Page was a specialist. (*Id.*)

The ALJ also noted that Dr. Page's opinion was not supported by his treatment notes, pointing out that Dr. Page's treatment notes were repetitive and did not reflect "new and independent observation[s]." (T. at 18.) Indeed, generally the only information that differs in the progress notes is that information describing Plaintiff's diagnoses and treatment. (T. at 218-244, 292A-293, 300-312.) Moreover, aside from a visit in November of 2001, the treatment notes reveal very little information relevant to Plaintiff's back. (T. at 218-244, 300-312.)

It is further noted that the Medical Source Statement itself offers little in the way of supporting evidence. When asked to state the medical/clinical findings supporting the exertional, postural, and environmental limitations in the assessment, Dr. Page provided no responses. (T. at 301-303.) Also, when asked to state the medical/clinical findings that support the manipulative limitation of an inability to reach, Dr. Page simply stated, "Patient is very limited & [illegible] significant [medications] for pain control." (T. at 302.)

Based on the foregoing, the Court finds that the ALJ properly assigned less than controlling weight to Dr. Page's opinion, and supported this determination with substantial evidence. Thus, the Court affirms the Commissioner's determination in this regard.

**B.     Whether The ALJ Erred in Finding that Plaintiff's Subjective Complaints Were Not Fully Credible**

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth

his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. § 404.1529 (2007); *see also Foster v. Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998); S.S.R. 96-7p, 1996 WL 374186 (S.S.A. 1996). First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) which could reasonably be expected to produce the claimant's pain or other symptoms. S.S.R. 96-7p, 1996 WL 374186, at *2. This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms. *Id.* If no impairment is found which could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities. *Id.* An individual's statements about his pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled. *Id.*

However, once an underlying physical or mental impairment(s) which could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to evaluate the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. S.S.R. 96-7p, 1996 WL 374186 at *2. Whenever a claimant's statements about the intensity, persistence, and limiting effects of the claimant's pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the claimant's

credibility. *Id.* A claimant's symptoms will be determined to diminish his/her capacity for basic work activities to the extent that his/her alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record. *Id.*

A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone. S.S.R. 96-7p, 1996 WL 374186, at *3. When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3).

An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 WL 470572, at *10 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.")).

Plaintiff claims that the ALJ failed to evaluate properly her credibility and failed to provide a

sufficient rationale for rejecting her testimony. (Dkt. No. 5 at 12-16.) Defendant contends that the ALJ properly considered Plaintiff's subjective complaints. (Dkt. No. 9 at 16-17).

In his decision, the ALJ found that Plaintiff's subjective complaints were not totally credible. (T. at 17- 21.) In coming to this conclusion, the ALJ did not discuss explicitly whether, based on the objective medical evidence, Plaintiff's impairments could not reasonably be expected to produce the pain or other symptoms alleged. As such, the first step of the two-step analysis of the evidence in the record, required by 20 C.F.R. § 404.1529, was not addressed.

If the Court were to assume that the ALJ had determined that the first step of the two-step analysis had been met, then the ALJ was required to assess the credibility of Plaintiff's subjective complaints by considering the record in light of the various symptom-related factors set forth in 20 C.F.R. § 404.1529(c)(3), which he did. The ALJ reviewed and discussed the relevant factors including: Plaintiff's daily activities; the location, duration, frequency, and intensity of Plaintiff's symptoms; precipitating and aggravating factors; the type, effectiveness, and side effects of medication taken to relieve symptoms; other treatment received to relieve symptoms; and measures taken by Plaintiff to relieve symptoms. (T. at 15-18.)

The ALJ also cited the inconsistent nature of Plaintiff's assertions. (T. at 18.) The Court notes that "[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." S.S.R. 96-7p, 1996 WL 374186, at *5 (S.S.A. 1996). The ALJ noted that despite Plaintiff's alleged back condition and restricted abilities, Plaintiff "apparently felt strong enough to shovel snow." (T. at 18.) Indeed, Dr. Page noted in January and April of 2004 that Plaintiff was "trying to shovel snow," causing elbow pain. (T. at 305, 308.) Moreover, at the hearing, Plaintiff stated that she was able to lift only "five or six pounds," but

in a questionnaire completed in August of 2003, Plaintiff wrote several times that she could lift up to ten pounds. (T. at 76, 79, 80, 331.) Further, Plaintiff testified that she was limited to walking "probably three or four" city blocks, but in the questionnaire, she stated that she could walk one mile. (T. at 82, 331.)

In sum, the ALJ's finding that Plaintiff's allegations were not totally credible is supported by substantial evidence, and thus is entitled to great deference. Therefore, the Court affirms the Commissioner's determination in this regard.[6]

### C.     Whether The Residual Functional Capacity Determination Is Supported by Substantial Evidence

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a) (2007). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomatology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Id.*; *Martone v. Apfel*, 70 F.Supp.2d 145, 150 (N.D.N.Y. 1999) (Hurd, D.J.).

To properly ascertain a claimant's RFC, an ALJ must assess a claimant's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. § 404.1569a (2007). Non-exertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. § 404.1569a; see also 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). When making an RFC determination, an ALJ must

---

[6] To the extent that Plaintiff argues that the ALJ erred in finding that she could perform work on a sustained basis in light of her testimony that she must periodically lie down and that her medications cause certain side effects, (Dkt. No. 5 at 14-16), the Court has found that the ALJ's analysis of Plaintiff's credibility is supported by substantial evidence. The ALJ discussed both of these specific alleged limitations in his decision and properly determined that Plaintiff's testimony was not entirely credible. (T. at 17-18.) Therefore, this claim is unavailing.

specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F.Supp.2d at 150 (citing *Ferraris*, 728 F.2d at 587). Further, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." S.S.R. 96-8p, 1996 WL 374184, at *7 (S.S.A.). An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations. *Martone*, 70 F.Supp.2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski*, 985 F.Supp. at 309-10.

In this case, the ALJ found that Plaintiff retained the RFC to perform sedentary work[7] that allows limited bending and limited contact with the public, and a moderate impairment in concentration; accordingly she is unable to perform her past relevant work. (T. at 19.) Plaintiff contends that the RFC determination is flawed because the ALJ "discount[ed]" the opinion of her treating physician, Dr. Page, and "adopt[ed]" the opinion of the State agency disability examiner. (Dkt. No. 5 at 10-11.) Defendant argues that the RFC determination is supported by substantial evidence. (Dkt. No. 9 at 11-18.)

To the extent that Plaintiff relies on Dr. Page's opinion, the Court has already determined that the ALJ properly assigned less than controlling weight to that opinion. *See supra* Part V.A. To the extent that Plaintiff claims that the ALJ "adopt[ed]" the disability examiner's opinion, this claim is

---

[7] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a) (2007). Sedentary work generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citation omitted).

without merit. The ALJ reviewed the relevant medical and other evidence contained in the record, and based Plaintiff's RFC on substantial evidence.

Regarding Plaintiff's physical abilities, the ALJ discussed findings made by Plaintiff's treating neurosurgeon, Kenneth S. Yonemura, M.D. (T. at 15-16.) The ALJ noted that Dr. Yonemura treated Plaintiff from June of 2002 to August of 2003, performing a left L5-S1 microendoscopic discectomy on September 5, 2002. (T. at 15-16, 184-191, 202-217.) On June 17, 2002, Dr. Yonemura noted that Plaintiff's cervical range-of-motion was within normal limits with no tenderness, but Plaintiff exhibited limited forward flexion in her spine. (T. at 215.) Dr. Yonemura reviewed a January 17, 2002 MRI of Plaintiff's lumbar spine which he interpreted as showing degenerative changes limited to the L4-L5 and L5-S1 disc spaces. (T. at 216.) He also noted that while Plaintiff presented "significant symptoms of pain involving the left lower extremity," the MRI findings "do not appear to be significant enough to necessarily cause severe symptoms in the left leg." (*Id.*) On October 28, 2002, Dr. Yonemura noted that Plaintiff's "presentation is somewhat confusing since she describes severe pain but does not appear to be in much distress." (T. at 207.) He also remarked that a follow-up MRI of Plaintiff's lumbar spine performed on October 16, 2002 showed a "marked reduction in the disc herniation seen on the left at L5-S1." (*Id.*) On December 2, 2002, Dr. Yonemura found that Plaintiff was in no acute distress and was able to perform a heel-and-toe walk adequately. (T. at 205.) He also noted that Plaintiff reported resolution of her left foot numbness and "some improvement in her lower extremity pain," and that she obtained a treadmill and was "attempting to increase her daily activity." (*Id.*)

The ALJ also discussed findings made by Joseph A. Catania, M.D., a pain management specialist, who treated Plaintiff with epidural injections from April of 2002 to May of 2003. (T. at

16, 245-255.) On April 24, 2002, Dr. Catania noted that Plaintiff's gait was within normal limits and she could heel-and-toe walk without difficulty. (T. at 253.) There was no tenderness of the sacroiliac joint or paraspinous muscles, the "[s]ensory examination" was "intact" and unremarkable in the lower extremities, motor strength in the lower extremities was full, and deep tendon reflexes were 2+ and symmetrical. (*Id.*) During subsequent visits, Dr. Catania noted that Plaintiff was in no acute distress and had a normal gait and station. (T. at 247-251.)

The ALJ also discussed the Physical RFC Assessment completed by the State agency disability examiner, J. Sakovitch, who found that Plaintiff was able to lift and/or carry up to twenty pounds occasionally; lift and/or carry up to ten pounds frequently; stand and/or walk about six hours in an eight-hour workday; and sit about six hours in an eight-hour workday. (T. at 18, 268.) It was also noted that Plaintiff could stoop only occasionally. (T. at 269.) While this assessment was not completed by an "acceptable medical source," *see* 20 C.F.R. § 404.1513(a)(1) (2007), under the regulations an ALJ must consider "all relevant medical *and other* evidence" while assessing a claimant's RFC. *See* 20 C.F.R. § 404.1545(a)(3) (2007) (emphasis added).

Additionally, it is noted that Plaintiff stated in a questionnaire that she was able to lift up to ten pounds. (T. at 76, 79, 80.) This statement is consistent with the ability to perform sedentary work. *See* 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time . . . .")

Regarding Plaintiff's mental abilities, the ALJ discussed the opinion of the State agency review physician, Carlos Gieseken, M.D., who reviewed reports from several of Plaintiff's treating and examining sources. (T. at 18, 274-277.) Dr. Gieseken found in a Psychiatric Review Technique Form that Plaintiff had a mild restriction in her activities of daily living; mild difficulties in

-15-

maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace. (T. at 288.) The Court notes that "State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such their opinions may constitute substantial evidence if they are consistent with the record as a whole." *See Leach ex rel. Murray v. Barnhart,* No. 02 Civ. 3561, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) (citing 20 C.F.R. § 416.927(f);[8] *Mongeur v. Heckler,* 722 F.2d 1033, 1039 (2d Cir.1983)). Further, the regulations provide, "[A]dministrative law judges *must consider* findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether you are disabled." 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) (2007) (emphasis added).

The ALJ also discussed findings made by an independent medical examiner, Robert Seidenberg, M.D., who is a psychiatrist and psychoanalyst. (T. at 16, 192-197.) After examining Plaintiff and reviewing various medical records, Dr. Seidenberg concluded that Plaintiff suffers from no psychiatric disorder or mental illness. (T. at 197.) He also found that there was "no need or indication for psychiatric treatment." *Id.*

The foregoing evidence provides substantial support for the ALJ's determination that Plaintiff could perform sedentary work that allows limited bending and limited contact with the public, and a moderate impairment in concentration. Therefore, the Court affirms the Commissioner's determination in this regard.

**WHEREFORE**, for the reasons set forth above, it is hereby

**ORDERED,** that the decision of the Commissioner of Social Security is **AFFIRMED**, and

---

[8] This section is the identical counterpart to 20 C.F.R. § 404.1527(f).

the complaint (Dkt. No. 1) is **DISMISSED**.

**IT IS SO ORDERED.**

Dated: September 18, 2007
       Syracuse, New York

                                            George H. Lowe
                                            United States Magistrate Judge